UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
RICHTONE DESIGN GROUP, LLC,          :
                                     :
                    Plaintiff,       :
         -v.-                        :
                                     :
LIVE ART, INC.,                      :
     d/b/a LIVE ART STUDIO,          :
     d/b/a LIVE ART PILATES,         :
SIRI GALLIANO,                       :
                                     :
                    Defendants.      :
---------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov. 4, 2013

No. 12 Civ. 7652 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFF RICHTONE DESIGN GROUP, LLC:
    Andrew L. Spence

FOR DEFENDANTS LIVE ART, INC. AND SIRI GALLIANO:
    Michael F. Sarney
    KATTEN MUCHIN ROSENMAN LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  For the reasons that follow, the motion is granted and the case is dismissed with prejudice.

## I.   Background

Plaintiff Richtone Design Group LLC is a New York LLC that licenses certification programs for exercise instructors using the "pilates" technique.  Defendant Live Art, Inc., which does business as Live Art Studio and Live Art Pilates ("Live Art") is a California corporation.  The owner of Live Art, pilates

instructor and California resident Siri Galliano, is also named as a Defendant in this action.

Plaintiff holds the rights to the Pilates Teacher Training Manual (the "Manual"), first compiled in 1993 by Pilates, Inc. and subsequently assigned to Plaintiff.  The Manual and its earlier versions allegedly contain photographs that have separately been copyrighted.  The Manual is used in connection with training fitness instructors in the Pilates exercise technique.  Plaintiff alleges that it learned in October 2011 that Defendants have been selling the Manual, as well as some pictures Plaintiff claims a copyright interest in, for profit without permission.  Plaintiff claims that it is owed royalties on Defendants' sales.  Plaintiff seeks damages, injunctive relief, attorney's fees, and costs.

Defendant Galliano copied the Court on a December 17, 2012 letter she wrote to Plaintiff's counsel, which Plaintiff has also filed as Exhibit G to its opposition papers.  In the letter, Galliano stated that she has a photocopy of pilates instructions that was given to her by another instructor, and that she has made approximately 20 copies.  She represented that "[t]here is no author named or copyright information on the xerox," and that "[i]t was never my intention to injure anyone and I'm happy to give Richtone my profit of $175."  She further

advised Plaintiff that she "has been on disability after four surgeries." See also Galliano Supp. Dec. ¶ 5.

Galliano next filed a pro se brief urging the Court to dismiss the case for lack of personal jurisdiction and failure to state a claim.  Plaintiff then amended its complaint to add that "Live Art and unknown defendants sold 'The Manual' . . . within the District without Plaintiff's permission or authorization." (Amended Compl. ¶ 6.)  The amended complaint does not go into further detail about Defendants' activity in New York.  Plaintiff also submitted a memorandum opposing Galliano's motion to dismiss.

Soon thereafter, Galliano secured pro bono counsel for both herself and her corporation.  At a conference on March 20, 2013, counsel for both parties agreed to withdraw their briefing on the then-pending motion to dismiss.  Counsel have now fully briefed a new motion to dismiss, which is premised solely on Rule 12(b)(2), lack of personal jurisdiction.

Defendants assert that personal jurisdiction in the Southern District of New York is improper.  First, Galliano argues that there is no basis for jurisdiction over her because she is a California resident and because her allegedly infringing acts were undertaken as an employee of Live Art. Live Art argues that only one of the allegedly infringing sales was made in New York, which is insufficient to subject it to

3

long arm jurisdiction.  Defendants also claim that Plaintiff
engineered the single sale in New York by inducing a Bronx woman
to place an order for the Manual.

At oral argument on this motion, Plaintiff's counsel
conceded that he orchestrated the single sale.  Nevertheless, he
argued that other facts demonstrate Defendants' New York
contacts.  Plaintiff's brief sets forth the facts that (1)
Galliano advertises herself as a teacher of the "New York
Pilates" method; (2) Galliano sells pilates equipment
manufactured by Gratz, a New York LLC; (3) Defendants have
placed "at least eleven" copies of the Manual into interstate
commerce; (4) Galliano has sold pilates photos and DVDs to ten
New York customers since 2010; and (5) Galliano maintains an
internet newsletter, which likely reaches some New York
residents. (Pl. Opp. at 6-9.)

## II.   Discussion

### A.   12(b)(2) Legal Standard

A Rule 12(b)(2) motion to dismiss for lack of personal
jurisdiction is "inherently a matter requiring the resolution of
factual issues outside of the pleadings and all pertinent
documentation submitted by the parties may be considered in
deciding this motion." John Hancock Prop. & Cas. Ins. Co. v.
Universale Reinsurance Co., No. 91 Civ. 3644, 1992 WL 26765, at
*6 n.1 (S.D.N.Y. Feb. 5, 1992).  Moreover, a court has

"considerable procedural leeway" in ruling on the motion. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). "It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Id. The court's decision in that regard affects the plaintiff's burden of establishing jurisdiction over the defendant. "Prior to discovery, a Rule 12(b)(2) motion will fail where plaintiff has pled in good faith legally sufficient allegations of jurisdiction." Buccellati Holding Italia SPA v. Laura Buccellati, LLC, 935 F. Supp. 2d 615, 620 (S.D.N.Y. 2013) (citing Ball v. Metallurgie Hoboken-Overpelt, 902 F.2d 194, 197 (2d Cir. 1990)) (internal quotation marks and alterations omitted).

In the instant case, the parties have not requested an evidentiary hearing, and discovery has not yet taken place. Accordingly, this Court "assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency." Ball, 902 F.2d at 197; see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84–85 (2d Cir. 2013). However, the Court need not "draw 'argumentative inferences' in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." Licci ex rel.

Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted).

To decide whether it has personal jurisdiction over Defendants, this Court must look to New York law. See, e.g., Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.")  Plaintiff does not claim general personal jurisdiction under section 301 of the New York Civil Practice Law and Rules ("CPLR"), but instead asserts long-arm jurisdiction under CPLR § 302(a)(1) and (a)(3).

Section 302 is a "single-act statute," which means that one transaction may suffice to confer jurisdiction. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005).  But that transaction must have been purposefully entered into, and there must be a "substantial nexus" between the transacted business and the cause of action. Id. (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 59–60 (2d Cir. 1985); Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17 (1970)).

The purposeful requirement means that "random, fortuitous, or attenuated contacts," or "the unilateral activity of another party," will not be enough to confer jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and internal quotation marks omitted).  Rather, the defendant must

have availed itself "of the privilege of conducting activities
within the forum State, thus invoking the benefits and
protections of its laws." McKee Elec. Co. v. Rauland-Borg Corp.,
20 N.Y.2d 377, 382 (1967).  The nexus requirement, meanwhile,
directs courts to determine whether there is a substantial
relationship between a plaintiff's claim and a defendant's New
York contacts. See Pearson Educ., Inc. v. Shi, 525 F. Supp. 2d
551, 555 (S.D.N.Y. 2007); see also Solé Resort, S.A. de C.V. v.
Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006)
(indicating that the nexus requirement tends to be satisfied
unless "the event giving rise to the plaintiff's injury had, at
best, a tangential relationship to any contacts the defendant
had with New York"); Royalty Network Inc. v. Dishant.com, LLC,
638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) ("Alternatively, even
where no specific transaction exists, jurisdiction may be
founded on a course of conduct connecting a defendant to the
forum state.")

        If a court determines that New York's long-arm statute
confers jurisdiction over a defendant, it must then consider
whether the exercise of jurisdiction complies with the Due
Process Clause of the Fourteenth Amendment. See Licci ex rel.
Licci, 673 F.3d at 60-61.  The requirements of due process are
met if the defendant "has sufficient minimum contacts with the
forum to justify the court's exercise of personal jurisdiction,"

and if "the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." <u>Porina v. Marward Shipping Co., Ltd.</u>, 521 F.3d 122, 127 (2d Cir. 2008) (quotation marks and internal citations omitted); <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 567-68 (2d Cir. 1996).

### B.   Analysis

### 1.   CPLR § 302(a)(1)

CPLR § 302(a)(1) allows jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state," where the plaintiff's claim results from that transaction.  Here, Plaintiff's assertion of jurisdiction under § 302(a)(1) rests almost entirely on the sale of one copy of the Manual to Violet Simpson, a Bronx woman, on January 26, 2012. (Pl. Opp. at 12-13.)  Plaintiff's brief argues that this single sale is enough, quoting <u>Pearson</u> as requiring only a single act, "so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted." <u>Pearson</u>, 525 F. Supp. 2d at 555 (citations and internal quotation marks omitted).

Plaintiff's reliance on <u>Pearson</u> is misplaced, because most New York courts have held that a defendant's activities are not purposeful where the <u>plaintiff</u> initiated the single sale in a

jurisdiction. See Buccellati, 935 F. Supp. 2d at 623–24
(collecting cases).  "The logic of these cases is that a
plaintiff cannot rely solely on its own manipulative acts to
create jurisdiction, and that in such circumstances the
defendant cannot be said to have purposefully availed itself of
the privilege of conducting activities in the state selected by
plaintiff." Id. at 624.  In the instant motion, Defendants urge
that Plaintiff must have engineered the sale to Ms. Simpson,
because she reached out to Defendant Galliano to order the
Manual and then kept the shipping packaging as evidence. (Def.
Br. at 12–13.)  At oral argument, Plaintiff's counsel admitted
to manufacturing the sale, and conceded that under the caselaw,
jurisdiction under § 302(a)(1) cannot rest on such manufactured
contacts.

In their papers, Defendants repeatedly state that this sale
is "the only transaction that is properly before the Court as a
contended basis for jurisdiction" under § 302(a)(1)." (Reply at
6.)  This is incorrect:  Plaintiff also points out that Galliano
acknowledges selling photographs and DVDs to New York customers
in ten separate transactions between 2010 and 2012, totaling
$1,000 in sales.  The parties dispute whether these materials
infringe Plaintiff's copyrights.  But that is irrelevant,
because the jurisdictional question is simply whether

9

Defendants' New York activities were purposeful, not whether they were legal.

This is a close and difficult question. On one hand, ten sales of pilates DVDs and photos into New York indeed constitute activity here, albeit of a de minimis nature. The sales were likely made through Defendants' online newsletter, and courts in this district have held that a defendant "who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts." E.g., Starmedia Network, Inc. v. Star Media, Inc., No. 00 Civ. 4647, 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) (citing Nat'l Football League v. Miller, No. 99 Civ. 11846, 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000)). And these sales of pilates paraphernalia are similar to the allegedly infringing sales of the Manual that form the basis of this action, thus fulfilling the "nexus" requirement of § 302. See Solé Resort, 450 F.3d at 104.

On the other hand, these transactions were between "unsophisticated parties . . . for transactions of relatively small amounts of money." Sichkin v. Leger, No. 11 Civ. 1067, 2012 WL 3150583, at *5 (E.D.N.Y. July 31, 2012) (no jurisdiction under § 302(a)(1) where contacts were "of insufficient quality"); see also Burger King, 471 U.S. at 475 ("random," "fortuitous," or "attenuated" contacts are not enough). And

10

even though Defendants filled ten orders over twelve years through their internet presence, "[c]ourts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users." ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 87 (E.D.N.Y. 2006) (citing Seldon v. Direct Response Techs. Inc., No. 03 Civ. 5381, 2004 WL 691222, at *4 (S.D.N.Y. Mar. 31, 2004)).  In sum, after looking at the "totality of all [the defendants'] contacts," it is not clear that "the exercise of jurisdiction would be proper." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Although it is a close question, the Court concludes that § 302(a)(1) suffices — barely — to confer jurisdiction on Defendants, in view of the ten sales into New York.  Whether it is reasonable as a matter of due process to exercise jurisdiction in under these circumstances is a separate question that is addressed later in this Opinion.

## 2.   CPLR § 302(a)(3)

It is appropriate to consider whether, as an alternative to § 302(a)(1), Plaintiff is correct that jurisdiction is proper under § 302(a)(3).  That section applies to a non-domiciliary who

> commits a tortious act without the state causing
> injury to person or property within the state, except
> as to a cause of action for defamation of character
> arising from the act, if he

11

> (i)  regularly  does  or  solicits  business,  or
> engages in any other persistent course of conduct, or
> derives  substantial  revenue  from  goods  used  or
> consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act
> to  have  consequences  in  the  state  and  derives
> substantial  revenue  from  interstate  or  international
> commerce[.]

In its opposition brief, Plaintiff premises its argument

exclusively on § 302(a)(3)(ii).  Thus, Plaintiff must show "(1)

tortious activity out of state, (2) causing injury in New York,

(3) that is reasonably foreseeable to a defendant, who (4)

derives substantial revenue from interstate commerce." Royalty

Network, 638 F. Supp. 2d at 423.  The parties dispute whether

the third and fourth prongs are present in the instant case.

### a.   The "Reasonable Expectation" Prong

The Second Circuit has noted that the "'test of whether a

defendant expects or should reasonably expect his act to have

consequences within the State is an objective rather than

subjective one.'" Kernan v. Kurz-Hastings, Inc., 175 F.3d 236,

241 (2d Cir. 1999) (quoting Allen v. Auto Specialties Mfg. Co.,

357 N.Y.S.2d 547, 550 (3d Dep't 1974)).  "[T]o establish a

reasonable expectation of consequences in New York, the

plaintiff must show an effort by the defendant to serve the New

York market." Starmedia, 2001 WL 417118, at *3.  "New York

courts thus look for tangible manifestations of a defendant's

intent to target New York, or for concrete facts known to the

12

nondomiciliary that should have alerted it to the possibility of
being brought before a court in the Southern District of New
York." Royalty Network, 638 F. Supp. 2d at 424 (citations and
internal quotation marks omitted).   The Royalty Network court
found it significant that the plaintiff had shown "neither
tangible manifestations of defendants' intent to target New York
nor . . . knowledge that a New York company held" the copyright
interests at issue in the case. 638 F. Supp. 2d at 424.

    In the instant case, Plaintiff argues that the following
facts, taken together, satisfy the "reasonable expectation"
prong:  (1) Defendant Galliano's pilates training in 1994; (2)
the copyright notices on the Manual; (3) Galliano's "continuing
relationship with Romana Kryzaowska," a pilates instructor who
once lived in New York; (4) Galliano's "stature within and
knowledge of the industry"; (5) her sales of pilates equipment
made by Gratz, a New York corporation; (6) her relationship with
Evolution Pilates; (7) Galliano's alleged sales of infringing
materials in New York; and (8) Defendants' "Pilates Post" online
newsletter, which allows subscribers to purchase items from
Defendants on the internet. (Pl. Opp. at 16.)

    Assuming the truth of these factual allegations, see Ball,
902 F.2d at 197, they are insufficient to confer personal
jurisdiction.   Indeed, most of them are utterly irrelevant.   As
noted earlier, the only alleged sale of the Manual into New York

13

is the one that Plaintiff orchestrated prior to initiating this action, and is therefore not probative of any intent to target New York.  The representations that Galliano trained in New York almost twenty years ago, and keeps in touch with someone who once worked in New York, are not even colorably pertinent. Similarly, the reference to her "stature within and knowledge of the industry," unadorned by context or supporting argumentation, is so general as to be useless.  The mention of Evolution Pilates appears to be in response to a recent edition of Galliano's newsletter, produced by Plaintiff as Exhibit O.  In the newsletter, Galliano states that while in town for the initial conference in this case, she attended a pilates workshop at Evolution Pilates, a studio in Long Island.  But the test is not whether a defendant knows anyone from New York or has ever visited New York; rather, it is whether the defendant targeted his or her business to New York.

We are left with the copyright notices on the Manual, Galliano's sales of Gratz pilates equipment, and her internet presence.  With respect to the copyright notices, the Court credits, for the purposes of resolving this motion, Plaintiff's claim that Galliano used White-Out to obscure a copyright notice that originally appeared on a page of the Manual that she copied and mailed to Violet Simpson.  Compare Pl. Opp. Ex. C, with id. Ex. D.  The notice says:  "© 1997 Pilates inc.  Pilates and the

14

Pilates Studio are Registered trademarks of Pilates inc."
However, the defense reply points out that Pilates Inc. was a
Montana corporation, and was "shut down" by Plaintiff's
principal, Sean Gallagher, in or around 2005. (Id. Ex. B ¶ 19.)
Under these circumstances, the copyright notice would not cause
someone in Defendants' position to reasonably expect legal
consequences in New York. See Royalty Network, 638 F. Supp. 2d
at 424.

Plaintiff also invokes Galliano's sale of pilates equipment
manufactured by Gratz, a New York company, as evidence of a
"purposeful affiliation" with New York. (Pl. Opp. at 17 (citing
Murdock v. Arenson Int'l USA, Inc., 554 N.Y.S.2d 887, 888 (N.Y.
1st Dep't 1990)).  In a supplemental declaration, Galliano
states that Defendant Live Art has sold pilates equipment since
1995.  In 2007, it began selling equipment by Gratz on
consignment, and receives either a 15% commission on sales or a
5% commission on referrals of customers directly to Gratz.
(Galliano Supp. Dec. ¶ 6.)  This arrangement, the details of
which are not in dispute, is insufficient to demonstrate
objective foreseeability.  Defendants cannot be said to have
purposely affiliated themselves with New York merely because
they made nonexclusive sales in California of pilates equipment,
only some of which was manufactured by a New York company.

Finally, Plaintiff asserts that New York litigation was
reasonably foreseeable in view of Defendants' internet activity,
which includes an online newsletter, the "Pilates Post."  It
appears that the newsletter includes "Paypal" buttons where
subscribers can order and pay for pilates material, some of
which allegedly infringes Plaintiff's copyrights. (Pl. Opp. Ex.
Q.)  Plaintiff therefore argues that the newsletter should be
considered an "interactive website," which can subject a
defendant to jurisdiction under the caselaw of this district.
See, e.g., Royalty Network, 638 F. Supp. 2d at 418-19; Capital
Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 358-59
(S.D.N.Y. 2009).

Even if it is true that the newsletter constitutes an
interactive website, Plaintiff's argument fails for two reasons.
First, the "spectrum of interactivity" test invoked by Plaintiff
is relevant only as to the "transacts business" prong of
§ 302(a)(1) — not, as Plaintiff contends, to the § 302(a)(3)
analysis. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252
(2d Cir. 2007) (concluding that "a website's interactivity may
be useful for analyzing personal jurisdiction under section
302(a)(1), but only insofar as it helps to decide whether the
defendant 'transacts any business' in New York.").  Indeed, the
cases cited by Plaintiff discuss the interactivity of a
defendant's website only in the § 302(a)(1) context. See Royalty

16

Network, 638 F. Supp. 2d at 419; Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564-65 (S.D.N.Y. 2000); see also, e.g., Weiss v. Barc, Inc., No. 12 Civ. 7571, 2013 WL 2355509, at *3-4 (S.D.N.Y. May 29, 2013); Capital Records, 611 F. Supp. 2d at 357-59; Freeplay Music, Inc. v. Cox Radio, Inc., No. 04 Civ. 5238, 2005 WL 1500896, at *6-7 (S.D.N.Y. June 23, 2005). Second, even if the spectrum test did apply to § 302(a)(3) as a technical matter, nothing about the Pilates Post evinces an intent to target New York. Cf. Weiss, 2013 WL 2355509, at *4-5; Buccellati, 935 F. Supp. 2d at 627 ("In short, nothing about Defendants' website or the way they have conducted their business demonstrates an attempt to 'serve the New York market' or suggests that they should have expected their conduct to have consequences in New York.").

### b.   The "Substantial Revenue" Prong

The parties also dispute whether Plaintiff has made a sufficient showing of the fourth requirement, substantial revenue from interstate commerce.  In its opposition brief, Plaintiff devotes all of one sentence to this element: "Considering the fourth element, Equipment sales of $1 or $2 million indicates that Ms. Galliano derives substantial revenue from interstate commerce." (Pl. Opp. at 17.)  Defendants counter that these figures represent gross sales, and that Live Art's actual revenue on these sales was an average of about $22,500

17

per year over fifteen years, for a total of about $337,500. (Reply at 8 (citing Galliano Supp. Dec. ¶ 4).)  Defendants represent that only "some" of this income came from outside California, although they do not elaborate.

The Court notes that the burden on Plaintiff is very low at this stage. See Ball, 902 F.2d at 197.  Thus, given their prima facie showing of at least some interstate commerce, Plaintiff has met its burden on this requirement.  Nevertheless, because Plaintiff fails to meet its burden on the reasonable expectation prong, jurisdiction is not proper under § 302(a)(3)(ii).

### 3.    Due Process

Because CPLR § 302(a)(1) would confer personal jurisdiction on Defendants, the Court turns to the due process analysis. Several district courts in this Circuit have stated that "satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements." E.g., Alzal Corp. v. Emporio Motor Grp., L.L.C., No. 13 Civ. 2636, 2013 WL 3866633, at *3 (S.D.N.Y. July 26, 2013).  While this proposition may "generally" wind up being correct, Second Circuit precedent requires a more rigorous inquiry.

A court analyzing due process must answer two questions: first, whether the defendant "has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction," and second, whether "the assertion of personal

18

jurisdiction is reasonable under the circumstances of the particular case." Porina, 521 F.3d at 127 (quotation marks and internal citations omitted); Metro. Life, 84 F.3d at 567-68. The Supreme Court and the Second Circuit have stated that these two considerations interact with each other as a "sliding scale": the stronger a plaintiff's showing of minimum contacts, the more compelling the defendant's showing must be that the exercise of jurisdiction would be unreasonable. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002); Metro. Life, 84 F.3d at 568-69 ("The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing — a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" (quoting Burger King, 471 U.S. at 477)); accord Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994) ("We think, moreover, that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.").

### a.   Minimum Contacts

The minimum contacts analysis requires the court to determine whether "the defendant 'purposefully availed itself'

of the privilege of doing business in the forum state and could 'reasonably anticipate being haled into court there.'" Pearson Educ., 525 F. Supp. 2d at 557 (quoting Burger King, 471 U.S. at 474–75); see also Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010) (asking "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.").  Although this inquiry is similar to that of New York's "transacting business" requirement, see Licci ex rel. Licci, 673 F.3d at 61 n.11, the Second Circuit has indicated that, at least in some cases, "[s]ome distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute," Best Van Lines, Inc., 490 F.3d at 248; see also Bonsey v. Kates, No. 13 Civ. 2708, 2013 WL 4494678, at *5 (S.D.N.Y. Aug. 21, 2013) (noting that "New York's long-arm statute encompasses a wider range of activity than the minimum-contacts doctrine").

Defendants have no property, employees, or bank accounts in New York, nor do they pay New York taxes.  On the other hand, as discussed earlier, they promulgate an online newsletter that New York customers can use to order items, which Defendants then ship into New York.  Defendants represent that they have made only about $1,000 in sales in New York from 2000 to 2012.  Even if these sales qualify as minimum contacts, it is an exceedingly

weak showing.  Accordingly, Defendants' burden on the "reasonableness" prong, while not insignificant, is correspondingly diminished.

### b.    Reasonableness

"The second part of the jurisdictional analysis asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice — that is, whether it is reasonable under the circumstances of the particular case." Bank Brussels Lambert, 305 F.3d at 129 (citations and internal quotation marks omitted).  A court must consider

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Metro. Life, 84 F.3d at 568 (collecting cases).

The Court agrees with Defendants that the application of these factors to this case militates against jurisdiction.  As another court in this district has recently noted, the exercise of jurisdiction here imposes a substantial burden on California defendants, especially where the complained-of conduct is de minimis. See North Jersey Media Grp., Inc. v. Nunn, No. 13 Civ. 1695, 2013 WL 5303816, at *4 (S.D.N.Y. Sept. 20, 2013) (Sweet,

J.).  Moreover, "California has a greater interest in adjudicating the actions of one of its residents as they relate to the copyright laws of the United States." Id.  And while Plaintiff has an interest in obtaining relief in its home state, "'that consideration is far from sufficient to tip the scales'" — particularly where, as here, Defendants' contacts with New York are extremely limited. Wego Chem. & Mineral Corp. v. Magnablend Inc., --- F. Supp. 2d ----, 2013 WL 2211460, at *7 (E.D.N.Y. May 21, 2013) (quoting Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen, No. 12 Civ. 6390, 2013 WL 1775440, at *10 (S.D.N.Y. Apr. 25, 2013)).

It is less important to the analysis but nevertheless worth mentioning that whatever Plaintiff's motives in pressing this suit, they seem inconsistent with any interest in convenient relief or efficient resolution.  Plaintiff is suing a disabled California woman (and the entity she does business as) because she made a very small amount of money mailing out photocopies of an old pilates manual.  The Court is hard pressed to identify any substantive social policy furthered by continued litigation of this matter in the Southern District of New York.  When all of these factors are considered in view of the "sliding scale" nature of the inquiry and the nominal conduct alleged in the amended complaint, the Court concludes that the exercise of personal jurisdiction would be unreasonable as a matter of due

process. See Burger King, 471 U.S. at 477; Wego Chem. & Mineral
Corp., 2013 WL 2211460, at *7.

    **C.    Jurisdictional Discovery and Leave to Replead**

    In its opposition brief, Plaintiff requests jurisdictional
discovery "to ascertain if the Defendants who present themselves
as major worldwide players in the Pilates movement world
generate sufficient revenue in New York City, the historic
fountainhead of the Pilates movement, to subject themselves to
specific jurisdiction." (Pl. Opp. at 18.)  However, the Second
Circuit has repeatedly stated that district courts need not
authorize jurisdictional discovery where the plaintiff fails to
make out a prima facie case for jurisdiction. See Best Van
Lines, Inc., 490 F.3d at 255.

    In the instant case, the Court can see no legitimate
purpose in permitting jurisdictional discovery.  In declining to
exercise its discretion as Plaintiff requests, the Court notes
that this is not a case where Plaintiff did not have "ample
opportunity to secure and present evidence relevant to the
existence of jurisdiction." Amidax Trading Grp. v. S.W.I.F.T.
SCRL, 671 F.3d 140, 149 (2d Cir. 2011) (citations and internal
quotation marks omitted).  Indeed, Plaintiff filed fifteen
exhibits in opposition to the instant motion, which the Court
duly construed in Plaintiff's favor but ultimately concluded
were either irrelevant or insufficient to defeat the motion.

This Court also has the discretion to grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Although Plaintiff has not sought leave to replead in connection with the instant motion, allowing such leave has been described as "the usual practice upon granting a motion to dismiss." Cortes Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). Of course, "leave to amend may properly be denied if the amendment would be futile." E.g., Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

In the instant case, Plaintiff has already amended its complaint once in the face of Defendants' first motion to dismiss for lack of personal jurisdiction. "Since [Plaintiff's] revised pleading, accompanied by [its] evidentiary proffer, fails to justify the exercise of jurisdiction by this court, there is no justification to invite still another effort on [its] part." Seldon v. Magedson, No. 11 Civ. 6218, 2012 WL 4475274, at *21 (S.D.N.Y. July 10, 2012). Dismissal with prejudice is therefore appropriate.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss pursuant to Rule 12(b)(2) is granted with prejudice.  The Clerk of Court is respectfully directed to close the case.


**SO ORDERED.**

Dated:     New York, New York
           November  4  , 2013

_____
                                    John F. Keenan
                          United States District Judge